UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **LEON COTTRELL,** | 2:15-cv-11237 |
| Petitioner, | HON. TERRENCE G. BERG |
| v. | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| **JAMES WOODS,** | |
| Respondent. | |

This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Leon Cottrell ("Petitioner") was convicted of first-degree murder, MICH. COMP. LAWS § 750.316, three counts of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court. He was sentenced to life imprisonment without parole on the first-degree murder conviction, concurrent terms of 20 to 40 years imprisonment on the assault convictions, and a consecutive term of two years imprisonment on the felony firearm conviction in 2011.

In his pleadings, as amended, Petitioner raises claims concerning the admission of other acts evidence, jury selection, the effectiveness of trial and appellate counsel, and misidentification. For the reasons stated

1

herein, the Court denies the amended habeas petition. The Court will also deny Petitioner  a certificate of appealability, but it will grant permission to proceed on appeal in forma pauperis.

## BACKGROUND

Petitioner's convictions arise from a retaliatory shooting outside of a Detroit nightclub on December 19, 2010 that resulted in the death of one person and injury to another person. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> On December 1, 2010, defendant was at a club in Detroit. He got into a verbal altercation with a friend of the victim, Ryan Stokes. The altercation escalated and led to Stokes and his friends being removed from the club. Afterward, Stokes's group went to a friend's house, and Carter Madlock, a mutual friend of Stokes and defendant, subsequently arrived in a car with others. Testimony revealed that Stokes approached the car and flashed his gun. Shortly thereafter, shots were fired. After driving away, Madlock called Stokes to discuss the shooting and defendant was overheard in the background of the conversation saying, "somebody shot at us, they gotta [sic] die." Madlock informed Stokes that the voice in the background was "H.P. Leon," a common nickname for defendant. Madlock said that defendant was angry and coming to get Stokes and his friends. On December 19, 2010, Stokes and Antwan Etheridge, along with two of their friends, were walking to their car from a club in Detroit when defendant opened fire on them, shooting Etheridge in the back and Stokes in the chest, killing Stokes. Defendant claimed that he was not the one who shot at Stokes and his friends.

*People v. Cottrell*, No. 306952, 2013 WL 4081224, *1 (Mich. Ct. App. Aug. 13, 2013).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising a claim concerning the admission of other act evidence. The court denied relief on that claim and affirmed Petitioner's convictions. *Id.* Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Cottrell*, 495 Mich. 916, 840 N.W.2d 352 (Dec. 23, 2013).

Petitioner dated his initial federal habeas petition on March 24, 2015. In that petition, he raised claims concerning the admission of other acts evidence, jury selection, and the effectiveness of trial and appellate counsel. Petitioner also moved to stay the proceedings so that he could return to the state courts and exhaust the jury selection and ineffective assistance of trial and appellate counsel claims. On April 13, 2015, the Court granted Petitioner's motion to stay the proceedings and administratively closed the case.

On June 10, 2015, Petitioner, through counsel, filed a motion for relief from judgment with the state trial court raising claims concerning the jury selection and the effectiveness of trial and appellate counsel, which was denied on July 14, 2015. *See* Register of Actions, *People v. Cottrell*, Wayne Co. Cir. Ct. Case No. 11-002576-01-FC. Petitioner then filed a delayed application for leave to appeal with the Michigan Court of

Appeals, which was denied. *People v. Cottrell*, No. 331088 (Mich. Ct. App. April 28, 2016). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Cottrell*, 500 Mich. 898, 887 N.W.2d 406 (Nov. 30, 2016).

Petitioner belatedly moved to reopen this case to proceed on an amended habeas petition. The Court granted that motion and reopened the case in October 2017. Respondent subsequently filed an answer to the amended petition contending that it should be denied because several claims are procedurally defaulted and all of the claims lack merit.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. The AEDPA provides in relevant part:

An application for a writ of habeas corpus on behalf of a person in pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent

5

'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an

error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*; *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require

7

citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## DISCUSSION

As an initial matter, Respondent contends that several of Petitioner's claims are barred by procedural default. It is well-settled, however, that federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the procedural default issue is complex and intertwined with the substantive issues, and the substantive issues are easier to resolve. Consequently, the interests of judicial economy are best served by addressing the merits of the claims.

### A.    Evidentiary claim

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in admitting "other acts" evidence concerning the events on December 1, 2010. Respondent contends that this claim is procedurally defaulted and that it lacks merit.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See*

9

*Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Petitioner raised this claim on direct appeal in the state courts and the Michigan Court of Appeals denied relief. The court ruled that the evidence of what transpired on December 1, 2010 was properly admitted into evidence as relevant to explain the circumstances that led to the shooting on December 19, 2010 and to provide the jury with the overall story of what led to the shooting. The court further ruled that the evidence was also properly admitted as "other acts" evidence under Michigan Rule of Evidence 404(b) because it provided evidence of motive and was relevant to prove premeditation, deliberation, and identity. *Cottrell*, 2013 WL 4081224 at *1-2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, the evidence was properly admitted under Michigan law. State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review"); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief does not lie for perceived errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

Second, Petitioner fails to establish that the admission of the evidence violated due process or rendered his trial fundamentally unfair. As to the admission of other acts evidence, the Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *Dowling v. United States*, 493 U.S. 342, 352–53 (1990). Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. Consequently, there is no Supreme

Court precedent that the state court decision can be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id.* at 513; *Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Petitioner fails to state a claim upon which habeas relief may be granted as to such an issue.

Moreover, Petitioner fails to show that the admission of the evidence rendered his trial fundamentally unfair. The evidence of what transpired on December 1, 2010 was properly admitted to explain the circumstances of the December 19, 2010 shooting (and was not truly other acts evidence in this regard) and was relevant to show motive, premeditation and deliberation, and identity. Petitioner fails to show that the admission of the evidence was erroneous or, more importantly for purposes of habeas review, that it rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

**B.  Jury selection claim**

Petitioner next asserts that he is entitled to habeas relief because the prosecutor used peremptory challenges to strike two black jurors without providing sufficient race-neutral, non-pretextual reasons. Respondent contends that this claim is procedurally defaulted and that it lacks merit.

Although a criminal defendant has no right to have a member of a particular race on the jury, he or she does have the right to be tried by a jury whose members are selected by non-discriminatory criteria. *See*

*Powers v. Ohio*, 499 U.S. 400, 404 (1991); *Taylor v. Louisiana*, 419 U.S. 522, 527-28 (1975). The Supreme Court "consistently and repeatedly has reaffirmed that racial discrimination by the State in jury selection offends the Equal Protection Clause." *Georgia v. McCollum*, 505 U.S. 42, 44 (1992). Consequently, a prosecutor is prohibited from challenging potential jurors solely on account of their race. *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986); *Lancaster v. Adams*, 324 F.3d 423, 432-33 (6th Cir. 2003); *see also Rivera v. Illinois*, 556 U.S. 148, 152 (2009). To be sure, the "Constitution forbids striking even a single prospective juror for a discriminatory purpose." *Foster v. Chatman*, _ U.S. _, 136 S. Ct. 1737, 1747 (2016).

To establish a prima facie case of purposeful discrimination in the selection of a jury based upon the prosecutor's exercise of peremptory challenges, a defendant must show that he or she is a member of a cognizable racial group and that the prosecutor used peremptory challenges to remove members of the defendant's race from the jury. The defendant must also show that other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude jurors on account of their race. Relevant circumstances include the pattern of strikes and the prosecutor's questions and statements. *Batson*, 476 U.S. at 96-97.

Once the defendant makes a prima facie showing, the burden shifts to the prosecutor to offer a "race neutral explanation" for challenging the jurors. *Id*. at 97. A "race neutral" explanation is one based upon something other than the juror's race. The issue is the facial validity of the prosecutor's explanation. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York*, 500 U.S. 352, 360 (1991); *see also Rice v. Collins*, 546 U.S. 333, 338 (2006).

If a race-neutral explanation is offered, the court must then determine whether the defendant carried the burden to prove purposeful discrimination. *Batson*, 476 U.S. at 98. The ultimate question of discriminatory intent concerns an evaluation of the prosecutor's credibility. Such a decision represents a factual finding accorded great deference on appeal, which will not be overturned unless clearly erroneous. *See Miller-El v. Cockrell*, 537 U.S. 322, 339-40 (2003). The defendant bears the final burden of proving purposeful discrimination. *Batson*, 476 U.S. at 98.

It is worth emphasizing that the critical question is not whether the state court's application of *Batson* was correct. Instead, "[t]he pertinent question is whether the state-court decision applied clearly established federal law in an objectively unreasonable manner, *id.* at 773, 130 S. Ct. 1855, such that its ultimate decision 'was so lacking in justification that

14

there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement[.]'" *Taylor v. Simpson*, 972 F.3d 776, 784 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Petitioner first raised this claim on collateral review in the state courts. Citing *Batson* and the foregoing standards, the trial court denied relief on this claim finding that the prosecutor provided sufficient race-neutral reasons for striking the two jurors and noting that the prosecutor left at least one other African American on the jury which negated a finding of discrimination. *Cottrell*, No. 11-002576-01-FC at *4-7.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The Sixth Circuit has recognized that where "the prosecutor provided race-neutral explanations for her strikes, and the trial court ruled on the ultimate question of intentional discrimination, whether the prima facie showing was met is a moot question." *Drain v. Woods*, 595 Fed. App'x 558, 570 (6th Cir. 2014). Because the trial court proceeded to the second step of the Batson analysis, the preliminary issue of whether Petitioner made a prima facie showing of discrimination is considered moot. *See Hernandez*, 500 U.S. at 359 ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the

15

preliminary issue of whether the defendant had made a prima facie showing becomes moot."); *Bryan v. Bobby*, 843 F.3d 1099, 1111 (6th Cir. 2016) (citing *Hernandez*).

The question is thus whether the trial court reasonably determined that the prosecution provided a race-neutral explanation for the peremptory challenges and concluded that no *Batson* violation occurred. During the trial, the prosecution represented that she used a peremptory challenge to remove Juror 6 based upon his lack of eye contact with the prosecutor and Juror 8 because he is a religious teacher who might not want to sit in judgment of others. *See* 9/12/11 Trial Tr., pp. 111-115 (ECF No. 12-5, PageID.335-339). The trial court found both explanations to be legitimate, nondiscriminatory reasons for the challenge and permitted the jurors' removal. *Id*. Having reviewed the record, this Court cannot find that the trial court's ruling was clearly erroneous. *See Snyder v. Louisiana*, 552 U.S. 472, 477 (2008). *See also Davis v. Ayala*, 576 U.S. 257, 273-74 (2015) ("A trial court is best situated to evaluate both the words and demeanor of jurors who are peremptorily challenged, as well as the credibility of the prosecutor who exercised those strikes."). "In reviewing the government's race-neutral explanation, we need not find that the reason given is 'persuasive, or even plausible.' All that is necessary is that the reason not be inherently discriminatory." *United States v. Lucas*, 357 F.3d 599, 609 (6th Cir. 2004) (internal citation

16

omitted) (quoting *United States v. Yang*, 281 F.3d 534, 548-49 (6th Cir. 2002). Petitioner does not present other evidence, such as explanations which contradict the record or comparison with similarly situated panel members, to show purposeful discrimination on the part of the prosecutor. *See Foster v. Chatman*, 136 S. Ct. 1737, 1754 (2016); *Miller-El v. Dretke*, 545 U.S. 231, 241 (2005) ("If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack [panelist] who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson's third step."). Therefore, this Court cannot conclude that the trial court made a clear error in determining the prosecution's peremptory challenge was free of racial bias as there is no other evidence of purposeful discrimination. Habeas relief is not warranted on this claim.

## C. Ineffective Assistance of Trial Counsel Claims

Petitioner also asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to provide a viable defense, failing to call certain witness, and failing to adequately explain a plea offer. Respondent contends that these claims are procedurally defaulted and that they lack merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, the Supreme Court set forth a two-

17

prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. 466 U.S. 668 (1984). First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id.* "On balance, the benchmark for

judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded to trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

Petitioner first asserts that trial counsel was ineffective for failing to provide a vigorous defense. He initially raised this claim on collateral review in the state courts. Citing the *Strickland* standard, the trial court denied relief on this claim finding that, while counsel did not call defense witnesses, counsel thoroughly cross-examined the prosecution witnesses, particularly as to their identification of Petitioner and their ability to perceive and recall the shooting. The court concluded that counsel's

strategy in this regard was reasonable. *Cottrell*, No. 11-002576-01-FC at *7-8.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The record shows that trial counsel thoroughly cross-examined the prosecution's witnesses about their abilities to identify or not identify Petitioner, which included questions about their intoxication levels, their ability to perceive events, their descriptions of the shooter, lineups they attended, and contradictions in their statements and identifications. *See, e.g.* 9/13/11 Trial Tr., pp. 137-152 (ECF No. 12-6, PageID.539-545); pp. 183-186 (ECF No. 12-6, PageID.585-588); 9/14/11 Trial Tr., pp. 18-30 (ECF No. 12-7, PageID.629-641); pp. 158-166 (ECF No. 12-7, PageID.769-777). Counsel's decision to contest the quality of the prosecution's case and to cast doubt on the credibility of the prosecution witnesses was a reasonable defense. *See, e.g., Hale v. Davis*, 512 F. App'x 516, 522 (6th Cir. 2013) (stating that sometimes it may be "better to try to cast pervasive suspicion of doubt" by challenging the prosecution's case than to "strive to prove a certainty that exonerates"). The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if

mistaken"). Petitioner fails to establish that counsel was ineffective in this regard. Habeas relief is not warranted on this claim.

Petitioner relatedly asserts that trial counsel was ineffective for failing to call defense witnesses, including res gestae witnesses, a possible alibi witness, himself, and expert witnesses on his hand injury and the reliability of identification testimony. Petitioner first raised this claim on collateral review in the state courts. Citing the *Strickland* standard, the trial court denied relief on this claim finding that Petitioner failed to show what new or beneficial testimony additional witnesses would have provided, that Petitioner failed to show that counsel erred by advising him not to testify and Petitioner waived his right to testify, and that Petitioner failed to show that counsel erred in not calling an expert because such issues involved common sense determinations. *Cottrell*, No. 11-002576-01-FC at *8-10.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. It is well-settled that defense counsel must conduct a reasonable investigation into the facts of a defendant's case or make a reasonable determination that such investigation is unnecessary. *Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The duty to investigate "includes the obligation to investigate all

witnesses who may have information concerning . . . guilt or innocence."
*Towns*, 395 F.3d at 258. That being said, decisions as to what evidence to
present and whether to call certain witnesses are presumed to be matters
of trial strategy. When making strategic decisions, counsel's conduct
must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see
also Wiggins*, 539 U.S. at 522-23. The failure to call witnesses or present
other evidence constitutes ineffective assistance of counsel only when it
deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92
F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749
(6th Cir. 2002).

Petitioner asserts that trial counsel should have investigated and
called res gestae witnesses "Smoke," "Meech," and "Cliff," as well as an
alibi witness, a Metro Cab driver named Linda who would have testified
that he was in her cab from 1:30 a.m. to 2:00 a.m. on the night of the
shooting.[1] Petitioner, however, fails to provide information about the
extent of counsel's investigation, fails to explain how the res gestae
witnesses would have benefitted his defense, and fails to provide
affidavits from trial counsel, the res gestae witnesses, or the alleged alibi
witness to support this claim. It is well-established that conclusory
allegations without evidentiary support are insufficient to warrant

---

[1]Petitioner referenced these witnesses in his motion for relief from
judgment in the state trial court.

federal habeas relief. *See, e.g., Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide a basis for an evidentiary hearing on habeas review). Petitioner thus fails to establish that counsel was ineffective or that he was otherwise deprived of a substantial defense.

Petitioner also asserts that trial counsel erred by not having him testify in his own defense at trial. A criminal defendant has a constitutional right to testify in his own defense or to refuse to do so. *Rock v. Arkansas*, 483 U.S. 44, 53 (1987). "The right to testify is personal to the defendant, may be relinquished only by the defendant, and the defendant's relinquishment of the right must be knowing and intentional." *United States v. Webber*, 208 F.3d 545, 550-51 (6th Cir. 2000). Counsel's role is to advise the defendant about whether to take the stand, but the final decision is left to the defendant. *Id.* at 551; *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983). If the defendant wants to testify, "he can reject his attorney's tactical decision by insisting on testifying, speaking to the court, or discharging his lawyer." *Id.* If the defendant fails to do so, waiver of the right to testify is presumed. *Id.*

In this case, Petitioner cites nothing in the record to substantiate his underlying assertion that he wanted to testify, but that trial counsel denied him the opportunity. Consequently, he fails to overcome the presumption that he willingly agreed with counsel's advice not to testify. *See Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000). Petitioner also fails to refute the presumption that counsel's advice that he not testify on his own behalf was sound trial strategy. For example, counsel may have thought that Petitioner would not be a credible witness and/or that he would not do well on cross-examination. Moreover, counsel was able to present a misidentification defense by challenging the prosecution witnesses and was able to argue reasonable doubt as a defense to the charges without Petitioner's testimony. Petitioner was not deprived of a substantial defense at trial. He thus fails to show that counsel was ineffective.

Petitioner next asserts that trial counsel failed to call expert witnesses who would have testified about the extent of his right hand injury and about the unreliability of witness identifications. Counsel, however, may have reasonably decided not to pursue the right hand injury issue because according to the prosecution Petitioner admitted during his taped interrogation that, while he could not move his pinky and ring finger, he was able to move his other fingers, *see* 9/12/11 Trial Tr., pp. 50-52 (ECF No. 12-5, PageID.274-276), which would not preclude

24

him from being able to fire a weapon. Similarly, counsel may have reasonably decided that an identification expert was not necessary because the witnesses' reliability could be adequately challenged through cross-examination and such matters could be readily understood by the jury. Such a decision was a matter of trial strategy and does not constitute deficient performance. *See Perkins v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011) ("No precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment."). Petitioner fails to show that counsel was ineffective in this regard.

Lastly, Petitioner asserts that trial counsel failed to adequately advise him about the plea offer, i.e., to explain that if he accepted the plea offer for second-degree murder he would receive 20 years in prison as opposed to a mandatory life sentence, and erroneously told him that the prosecution would have a difficult time proving its case.

Petitioner first raised this claim on collateral review in the state courts. Citing the *Strickland* standard, the trial court denied relief on this claim ruling that Petitioner failed to show that counsel misadvised him about the plea offer or erred in telling him that the prosecution would have a difficult time proving its case. The court further found that

Petitioner declined the plea offer based upon his claim of innocence. *Cottrell*, No. 11-002576-01-FC at *10-11.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Criminal defendants are entitled to the effective assistance of counsel during plea negotiations. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). Trial counsel can be ineffective when his or her erroneous advice results in the rejection of a plea offer if the defendant would have otherwise accepted the plea bargain. *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012).

In this case, Petitioner fails to establish that trial counsel was ineffective. First, Petitioner presents no evidence, other than his own assertions, to show that counsel misadvised him about the case against him, the plea offer, or the consequences of accepting or rejecting that offer. As discussed, conclusory allegations are insufficient to warrant federal habeas relief. *See Cross*, 238 F. App'x at 39-40; *Workman*, 178 F.3d at 771; *see also Washington*, 455 F.3d at 733. Petitioner's assertions about counsel's advice are also suspect given his vested interest in the matter. *See, e.g., McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) ("A reasonable juror surely could discount [a petitioner's] own testimony in support of his own cause.").

Second, Petitioner's assertion that he was not adequately informed about the plea offer is belied by the record which indicates that the trial court advised Petitioner of the charges and that he faced life sentences on several of them if convicted, *see* Prelim. Ex. Tr., p. 3 (ECF No. 12-2, PageID.137), that trial counsel discussed the plea offer with Petitioner, that the parties discussed the second-degree plea offer with a 20-year sentence (plus two years for felony firearm) before the start of trial, and that Petitioner confirmed that he rejected the offer due to a claim of innocence. *See* 9/12/11 Trial Tr., pp. 4-5 (ECF 12-5, PageID.228-229).

Third, any claim by Petitioner that he rejected the plea offer based upon trial counsel's mistaken assessment of the strength of the prosecution's case relative to his possible defense is unavailing. Even if counsel made an "erroneous strategic prediction" concerning the likely outcome of the trial, that is not, by itself, proof of deficiency. *See Lafler*, 566 U.S. at 174.

Lastly, it is doubtful that Petitioner would have accepted the plea offer but for trial counsel's purported conduct given that Petitioner confirmed his rejection of the plea offer on the record shortly before trial began and given that he maintained his innocence throughout his trial and appeal. Petitioner fails to establish that counsel was ineffective during the plea process or during the trial. Habeas relief is not warranted on these claims.

27

### D. Misidentification Claim

Petitioner next asserts that he is entitled to habeas relief because of misidentification, but does not elaborate on the legal or factual basis for this claim. Respondent contends that this claim is unexhausted and now procedurally defaulted, and that it fails to state a claim upon which habeas relief may be granted.

While pro se pleadings are to be liberally construed, "a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996). Habeas petitioners must meet the heightened pleading standards set forth in the Rules Governing Section 2254 Cases. *McFarland v. Scott*, 512 U.S. 849, 855 (1994). Those rules provide, in relevant part, that a habeas petition must: (1) specify all the grounds for relief available to the petitioner; (2) state the facts supporting each ground; (3) state the relief requested. Rule 2(c), Rules Governing Section 2254 Cases; *see also Mayle v. Felix*, 545 U.S. 644, 655 (2005) ("[N]otice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error."). Additionally, as previously discussed, conclusory allegations are insufficient to justify federal habeas relief. *See Cross*, 238 F. App'x at 39-40; *Workman*, 178 F.3d at 771; *see also Washington*, 455 F.3d at 733.

In this case, Petitioner fails to specify the legal or factual basis for this misidentification claim (as distinct from his claim that counsel was ineffective for failing to call a witness identification expert),[2] nor does he provide any discussion of the issue in his original habeas petition or his amended habeas petition. Consequently, he fails to state a claim upon which habeas relief may be granted as to this issue.

### E.    Ineffective Assistance of Appellate Counsel Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise several of the foregoing issues (other than the other acts evidence claim) on direct appeal. Respondent contends that this claim lacks merit.

As discussed *supra*, in order to establish ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. With regard to appellate counsel, it is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones*, 463 U.S. at 751. The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim

---

[2]Petitioner did not raise "misidentification" as a distinct claim in his motion for relief from judgment in the state trial court.

> suggested by a client would disserve the … goal of vigorous and
> effective advocacy …. Nothing in the Constitution or our
> interpretation of that document requires such a standard.

*Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner first raised this claim on collateral review in the state courts. Citing the *Strickland* standard, the trial court denied relief concluding that Petitioner failed to establish that appellate counsel was ineffective. *Cottrell,* No. 11-002576-01-FC at *3-4.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner fails to show that by omitting the claims presented in

his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. None of the claims subsequently raised by Petitioner are "dead-bang winners" as evidenced by the state trial court's ruling. Moreover, even if appellate counsel erred in some fashion, Petitioner cannot show that he was prejudiced by counsel's conduct given that the underlying claims lack merit. *See* discussion *supra*. Appellate counsel cannot be deemed ineffective for failing to raise issues that lack merit. *See Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Habeas relief is not warranted on this claim.

## CONCLUSION

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the amended petition for a writ of habeas corpus.

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies habeas relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that

reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Petitioner makes no such showing. Accordingly, the Court **DENIES** a certificate of appealability.

The Court will, however, grant permission to appeal in forma pauperis because an appeal of this decision can be taken in good faith. 28 U.S.C. § 1915(a)(3). "'Good faith' merely requires showing that the issues are arguable on the merits; it does not require a showing of probable success." *Foster v. Ludwick*, 208 F.Supp.2d 750, 765 (E.D. Mich. 2002) (quoting *Howard v. King*, 707 F.2d 215, 219-20 (5th Cir. 1983)). While reasonable jurists would not debate the Court's assessment of the claim, the issues are not frivolous. Therefore, the Court **GRANTS** permission to appeal in forma pauperis.

Accordingly, the Court 1) **DENIES** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **GRANTS** permission to appeal in forma pauperis.

**SO ORDERED.**

s/Terrence G. Berg

Dated:  November 30, 2020        TERRENCE G. BERG
                                 UNITED STATES DISTRICT JUDGE